IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 43499

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 678 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 13, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| DON EDWARD COLLOM, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Franklin County. Hon. Mitchell W. Brown, District Judge.

Judgment of conviction for lewd conduct with a minor child under sixteen, affirmed.

May, Rammell & Thompson, Chtd.; Bron M. Rammell, Pocatello, for appellant. Bron M. Rammell argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GRATTON, Judge

Don Edward Collom appeals from his judgment of conviction for lewd conduct with a minor child under sixteen. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Collom owned a resort and employed J.W., a fifteen-year-old boy, at the resort. J.W. alleged Collom molested him in one of the rooms at the resort. J.W. told his friend (Friend) about the alleged incident.

The State charged Collom with lewd conduct with a minor child under sixteen, Idaho Code § 18-1508. Collom subpoenaed Friend to testify about J.W.'s reputation for truthfulness and inconsistencies in J.W.'s story. Before trial, the district court entered orders excluding witnesses from hearing the testimony of other witnesses under Idaho Rule of Evidence 615(a)

1

(I.R.E. 615 order) and preventing witnesses from speaking with each other about the case (case discussion order).

At a pretrial conference, Collom informed the district court that J.W.'s mother (Mother) had violated the case discussion order by having a conversation with Friend in which she instructed Friend about how to testify. No remedy was requested.

Before the presentation of evidence, Collom moved to exclude Mother from hearing the testimony of other witnesses pursuant to the district court's I.R.E. 615 order because she was a witness. The court exempted Mother from its I.R.E. 615 order and allowed her to be in the courtroom as the family representative under I.C. § 19-5306(3).

Before Friend testified, Collom's attorney asked the court if he could question Friend about her pretrial conversation with Mother. The court resolved the matter outside the presence of the jury, and Collom's attorney did not question Friend about her conversation with Mother.

The jury found Collom guilty. Collom moved for a new trial. In Collom's memorandum in support of his motion for a new trial, Collom's attorney asserted, among other things, that he abandoned his examination of Friend because Friend was not testifying fully and freely. He attributed Friend's reluctance in testifying to her conversation with Mother and Mother's presence in the courtroom when Friend testified. The district court denied Collom's motion for a new trial because he had not asserted statutory grounds for a new trial. Collom timely appeals.

## II.

## ANALYSIS

Collom argues the district court deprived him of due process. Within his due process claim, Collom asserts the court erred in denying his motion to exclude Mother from the courtroom and designating Mother as the family representative. Collom also contends the prosecutor committed misconduct in his closing argument and cumulative error.

### A. Due Process

Collom argues the district court deprived him of due process by allowing Mother to intimidate Friend. According to Collom, due process affords him the "right to present witnesses who can 'freely and fully' testify." Collom claims Friend was unable to testify freely, fully, and truthfully because the court allowed Mother to intimidate Friend. Collom's due process argument arises from three events that occurred in the district court. We first address any error Collom might claim the court committed at these events.

2

The first event occurred at a conference between the parties prior to trial.[1] Collom informed the court that Mother had violated the case discussion order by having a conversation with Friend in which she instructed Friend to be honest, but limit her testimony to "yes" or "no" responses and not provide any details. Although the record is clear that Collom brought the conversation between Mother and Friend to the court's attention, the record does not reveal a contemporaneous objection. Nor does the record show that Collom requested any relief or the district court issued an adverse ruling. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). "It is well settled that in order for an issue to be raised on appeal, the record must reveal an adverse ruling that forms the basis for assignment of error." *State v. Huntsman*, 146 Idaho 580, 585, 199 P.3d 155, 160 (Ct. App. 2008) (citing *State v. Amerson*, 129 Idaho 395, 401, 925 P.2d 399, 405 (Ct. App. 1996)). Collom has shown no error related to the first event.

The second event occurred during trial, prior to the presentation of evidence. Collom moved to exclude Mother from hearing the testimony of other witnesses pursuant to the district court's I.R.E. 615 order because she was a witness. Collom's attorney stated, "I just wanted to touch upon the ruling of this court excluding witnesses. . . . I just don't see where it is that [Mother], as a called witness, is permitted to stay in the room." The State responded that the court should allow Mother to be in the courtroom as a victim and family representative under I.C. § 19-5306(3). According to the State, the court could appoint a family representative because J.W.'s emotional state prevented him from being at the trial except to testify. Collom's attorney asked the court to instead appoint J.W.'s father (Father) as the family representative because he was not a witness. The court found J.W.'s emotional state incapacitated him and prevented him from exercising his rights personally and there was no reason to reject Mother as the representative. Accordingly, the court exempted Mother from its I.R.E. 615 order and allowed her to be in the courtroom as the family representative.

Whether to grant a motion to exclude witnesses is committed to the sound discretion of the trial court. *State v. Danson*, 113 Idaho 746, 748, 747 P.2d 768, 770 (Ct. App. 1987). Collom has not demonstrated an abuse of discretion in the district court's decision to deny Collom's

---

[1] Although the record does not contain a transcript of this conference, Collom's memorandum in support of his motion for a new trial and a colloquy between the parties prior to Friend's testimony indicate the conference occurred and what the parties generally discussed at the conference.

motion to exclude Mother from the courtroom. The court acknowledged that appointing Mother as the family representative required it to exempt her from its I.R.E. 615 order. Moreover, the purpose of I.R.E. 615 is to allow courts to prevent witnesses from "shaping their testimony to conform to or rebut the prior testimony of other witnesses." *Huntsman*, 146 Idaho at 589, 199 P.3d at 164. In this case, given the manner of presentation of evidence, there was no danger that Mother would have shaped her testimony to conform to or rebut the prior testimony of other witnesses. Finally, Collom did not contemporaneously provide any reason, other than the I.R.E. 615 order, why the court should exclude Mother from the courtroom. Specifically, Collom did not contemporaneously allege that denying his motion to exclude Mother from the courtroom would allow Mother to intimidate Friend during her testimony, thus violating his due process right. Collom based his objection to Mother's presence in the courtroom solely on the fact that Mother was a witness and her presence in the courtroom violated the I.R.E. 615 order. Thus, we see no abuse of discretion in the court's decision to deny Collom's motion to exclude Mother from the courtroom.

Also based on the second event, Collom asserts the district court abused its discretion in designating Mother as the family representative. Pursuant to the Idaho Constitution, I.C. § 19-5306 provides many rights to crime victims, including the right "to be present at all criminal justice proceedings." I.C. § 19-5306(1)(b). Idaho Code § 19-5306(3) states:

> The provisions of this section shall apply equally to the immediate families of homicide victims or immediate families of victims of such youthful age or incapacity as precludes them from exercising these rights personally. The court may designate a representative from the immediate family to exercise these rights on behalf of a deceased, incapacitated, or minor victim.

A court's decision to designate a family representative under I.C. § 19-5306(3) is discretionary. *State v. Payne*, 146 Idaho 548, 575, 199 P.3d 123, 150 (2008). Collom asserts the district court erred by failing to conclude J.W. was "of such youthful age or incapacity" as to preclude him "from exercising [his] rights personally" before appointing Mother as the family representative. I.C. § 19-5306(3). Collom further asserts the court should have appointed Father as the family representative instead of Mother.

Contrary to Collom's assertion, the court concluded that J.W.'s emotional state incapacitated him and prevented him from exercising his rights personally before appointing Mother as the family representative. The court noted that it had appointed a family representative in the past when a victim is incapacitated and unable to be present in court

4

because of "emotional turmoil." The prosecutor informed the court that J.W. would not be present in court, except to testify, because of his emotional state. The court then exempted Mother from its I.R.E. 615 order and allowed her to be in the courtroom as the family representative. This exchange makes it clear that the court concluded that J.W.'s emotional state incapacitated him and prevented him from exercising his rights personally before appointing Mother as the family representative.

Moreover, Collom did not allege at the time that appointing Mother as the family representative would allow Mother to intimidate Friend during her testimony, thus violating his due process right. Collom based his objection to Mother's appointment as the family representative solely on the fact that Mother was a witness and her presence in the courtroom violated the court's I.R.E. 615 order. Finally, although the court, in its discretion, could have designated Father as the representative instead of Mother, appointing Mother as the representative was not beyond the discretion of the court.

The third event occurred during trial, prior to Friend's testimony. Collom's attorney asked the district court if he could question Friend about her conversation with Mother. Outside the presence of the jury, the court asked Friend about the conversation. Friend told the court about the conversation and that she had felt somewhat intimidated by the conversation. The court instructed Friend to testify truthfully and fully, and she agreed that she would. The court then told Collom's attorney, "I think whatever concern or fear she has, has been alleviated. I don't know what point we would have in going into that otherwise." Collom's attorney responded, "That's fine." Collom's attorney did not question Friend about her conversation with Mother or raise any objections during Friend's testimony.

The record does not show that Collom objected to any error based on the third event or requested relief because of any error. The record also does not reveal that the district court issued any ruling. Rather, as noted above, Collom indicated satisfaction with the way the court handled the situation. Further, Collom's attorney did not question Friend about her conversation with Mother or raise any objections during Friend's testimony. Collom has shown no error regarding this event.

Having addressed any error Collom claims in the events he bases his due process argument on, we address Collom's actual due process argument. Collom does not separately analyze the three events under his due process claim. Rather, he cobbles the events together into

5

a sequence of events in which his attorney objects to Mother's conversation with Friend, the court questions Friend about the conversation, Friend tells the court she felt intimidated by the conversation, Collom's attorney moves to exclude Mother from the courtroom as a remedial measure, the court denies the motion, Friend testifies, Mother's presence in the courtroom impacts Friend's testimony, and Collom's attorney abandons his examination of Friend. Based on this sequence of events, Collom argues the district court deprived him of due process by allowing Mother to intimidate Friend.

Collom grossly mischaracterizes these events. The record shows that Collom did not contemporaneously[2] object on any ground, including due process grounds, to intimidation by Mother at any point during the three events. While the record shows that Collom brought Friend's conversation with Mother to the court's attention, it does not show that Collom objected or requested relief because of any error or that the district court issued any ruling on an objection. Further, although Collom did object to Mother's presence in the courtroom at the second event, he made his objection pursuant to the court's I.R.E. 615 order because Mother was a witness, not because of any expressed concern that Mother might intimidate Friend, and therefore, violate his due process right. Because Collom did not contemporaneously object on due process grounds to the witness intimidation he now alleges, Collom has failed to preserve this issue for appeal.

Although Collom did not contemporaneously object on due process grounds to the witness intimidation he now asserts, Idaho decisional law has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained

---

[2] Collom did object on due process grounds to intimidation by Mother in his motion for a new trial. However, a due process violation based on witness intimidation is not grounds for granting a new trial under I.C. § 19-2406.

6

in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

While Collom asserts Mother's alleged intimidation of Friend violated his due process right under the Fourteenth Amendment to the United States Constitution, he does not argue fundamental error or employ the *Perry* framework. The only allusion to fundamental error in Collom's argument appears in his reply brief where he admits that he did not properly object. Collom states: "[E]ven if trial counsel failed to properly object, allowing [Mother] to stay in the courtroom while [Friend] testified, was Plain Error under the circumstances." A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Further, a reviewing court looks to the initial brief on appeal for the issues presented on appeal. *Hernandez v. State*, 127 Idaho 685, 687, 905 P.2d 86, 88 (1995); *State v. Raudebaugh*, 124 Idaho 758, 763, 864 P.2d 596, 601 (1993). Consequently, "this Court will not consider arguments raised for the first time in the appellant's reply brief." *Myers v. Workmen's Auto Ins. Co.*, 140 Idaho 495, 508, 95 P.3d 977, 990 (2004). Because Collom's only reference to fundamental error occurs in his reply brief, Collom has waived consideration of his alleged due process violations under fundamental error.

Moreover, even if Collom had argued the alleged due process violation amounted to fundamental error, he has not met any of the prongs of the *Perry* test. Although Collom asserts Mother's alleged intimidation of Friend violated his due process right under the Fourteenth Amendment to the United States Constitution, he has not cited any case where the presence of a witness in the courtroom amounted to a due process violation. Further, it is not clear or obvious from the record that there was any contemporaneously alleged witness intimidation or any substantial basis to exclude Mother upon which to base error. Finally, while counsel alleged after trial that he abandoned his examination of Friend because Friend was not testifying fully and freely, these allegations fall short of demonstrating prejudice. Accordingly, even if Collom had argued fundamental error, his argument would have failed under each of the prongs of the *Perry* test.[3]

---

3    Collom asserted the alleged due process violations amount to structural error for the first time at oral argument. The United States Supreme Court has found that the following errors constitute structural defects: (1) complete denial of counsel (*Gideon v. Wainwright*, 372 U.S. 335 (1963)); (2) biased trial judge (*Tumey v. Ohio*, 273 U.S. 510 (1927)); (3) racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254 (1986));

**B.      Prosecutorial Misconduct**

Collom claims the prosecutor committed misconduct in closing argument. According to Collom, statements in the prosecutor's closing argument vouched for J.W.'s credibility, disparaged defense counsel, and appealed to the emotion and passion of the jury.

Collom made no contemporaneous objection at trial to all but one of the statements in the prosecutor's closing argument he now claims were misconduct. In *Perry*, the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when a defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978.

While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *Field*, 144 Idaho at 571, 165 P.3d at 285. However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.* Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing

---

(4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168 (1984)); (5) denial of a public trial (*Waller v. Georgia*, 467 U.S. 39 (1984)); (6) defective reasonable-doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275 (1993)); and (7) erroneous deprivation of the right to counsel of choice (*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). Although there may be other constitutional violations that would so affect the core of the trial process that they require an automatic reversal, as a general rule, most constitutional violations will be subject to harmless error analysis. *Neder v. United States*, 527 U.S. 1, 8 (1999). The due process allegations in this case in no way amount to a structural defect. Moreover, Collom waived consideration of whether his alleged due process violations amount to structural error by failing to assert a structural defect before oral argument. *See State v. Lewis*, 126 Idaho 77, 82 n.2, 878 P.2d 776, 781 n.2 (1994).

8

argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985). A prosecuting attorney may express an opinion in argument as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.*

Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also Raudebaugh*, 124 Idaho at 769, 864 P.2d at 607; *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998). The prosecutor's closing argument should not include disparaging comments about opposing counsel. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984). However, comments that characterize defense arguments and theories, but are not directed at defense counsel, are not improper. *State v. Norton*, 151 Idaho 176, 189, 254 P.3d 77, 90 (Ct. App. 2011). In determining whether a prosecutor's comment violated due process, this Court does "not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)).

Collom first asserts the prosecutor vouched for J.W.'s credibility during closing argument by saying J.W. was not a bad employee. We disagree. During the trial, several of J.W.'s coworkers had testified that J.W. was a bad employee. In discussing this evidence, the

9

prosecutor pointed out flaws in the testimony of J.W.'s coworkers and then stated: "The reality is, he wasn't a bad employee." Thus, the prosecutor was clearly pointing to the truth or falsity of the coworkers' testimony, not vouching for J.W.'s credibility. Accordingly, the prosecutor's argument was not improper.

Collom next asserts the prosecutor disparaged defense counsel by implying that Collom's attorney forced Friend to leave a test so she could testify. The prosecutor stated: "I feel bad for [Friend] because she had to leave a test at school to come [testify]. And you could tell she was pretty upset. She had a hard time testifying. She did a good job. She felt bad that she had to be here." Collom gives this statement its most damaging meaning. The prosecutor made this comment while discussing the testimony of defense witnesses. Thus, the prosecutor was likely commenting on Friend's testimony, not disparaging Collom's attorney by implying he forced her to leave a test so she could testify. Moreover, Collom's attorney had already represented to the court in the presence of the jury that Friend would be late because she had to leave a test so she could testify. The prosecutor's recitation of this information in his closing argument was, therefore, not improper.

Collom also asserts the prosecutor disparaged defense counsel by comparing the defense to a parade, squid or octopus, and an attorney in the musical *Chicago*. In comparing the defense to a parade, the prosecutor stated:

> Why do I talk about a parade? Because the defense has entered a whole lot of floats. They paraded people up here as quick as they could get them in and out yesterday. They entered all these floats and bands into the parade. Why did they do that? Again, they want to shift your focus away from that individual and put it on that kid back there. They want to say look over here, don't look there.

In comparing the defense to a squid or octopus, the prosecutor stated:

> We call that a squid or an octopus defense. Why do you say that? . . . [A] squid or an octopus, what they do is if a predator is coming after them, they ink. They put out this big cloud of ink because they want to get away. Sometimes it will blind the predator. Sometimes it will just create a cloud so you don't really see what's going on beyond that ink and they can get away from the predator. The defense is trying to put up an ink cloud so Don Collom can't be seen, so that he can walk away.

In comparing the defense to the musical *Chicago*, the prosecutor stated:

> [H]e used to talk about when he was defending his client . . . I'm going to give them the little razzle-dazzle over here, to make you guys look in this direction. Okay? While his client just slid out the backside and got away with it.

10

That's what we've got going on here. They're giving you the razzle-dazzle. They're giving you the razzle-dazzle saying look here, look at [J.W.] don't look at my defendant sitting right here. Look somewhere else.

When viewed in context, the prosecutor's comparisons were characterizations of defense arguments, tactics, and theories and were not directed at defense counsel. The prosecutor used these comparisons to illustrate his assertion that the defense was trying to distract the jury from Collom's crime and draw the jury's attention to J.W.'s flaws. The prosecutor's reply argument confirms that the comparisons were not meant to disparage defense counsel. In his reply argument, the prosecutor stated: "[Defense counsel is] a good attorney. You can see he's a good attorney. . . . He does a good job for his client." Thus, we are not convinced the prosecutor's comparisons disparaged defense counsel. Accordingly, the prosecutor's comparisons were not improper, though unnecessary to effective argument.

We next address whether the objected-to statement in the prosecutor's closing argument amounted to prosecutorial misconduct. During his closing argument, the prosecutor addressed argument that J.W. told his parents about the alleged abuse to avoid punishment for being disrespectful. The prosecutor stated: "Your child comes to you, discloses this type of abuse. Do you care about [punishing your child for being disrespectful]?" Collom objected to the prosecutor asking the jury how they would feel, and the district court instructed the jury to strike the comment from their consideration and admonished the prosecutor not to make any similar requests of the jury. Collom now claims that in light of the unobjected-to statements in the prosecutor's closing argument, this statement was prejudicial despite the curative instruction the court gave the jury. Having found no misconduct in the unobjected-to statements the prosecutor made in closing argument, we hold the court's instruction to the jury cured any prejudice that may have resulted from this statement.

## C. Cumulative Error

Collom also contends that the cumulative error doctrine applies here, necessitating a reversal of his conviction. Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *State v. Adamcik*, 152 Idaho 445, 483, 272 P.3d 417, 455 (2012). However, a necessary predicate to the application of the doctrine is a finding of more than one error. *Id*. Collom has failed to demonstrate at least two errors, a necessary predicate to the application of the cumulative error doctrine.

11

## III.
## CONCLUSION

The district court did not abuse its discretion in denying Collom's motion to exclude Mother from the courtroom or designating Mother as the family representative. Collom did not contemporaneously object on due process grounds to the witness intimidation he now asserts and failed to demonstrate fundamental error. The prosecutor did not commit misconduct in his closing argument. Finally, Collom has failed to demonstrate cumulative error. Collom's judgment of conviction for lewd conduct with a minor child under sixteen is affirmed.

Judge GUTIERREZ and Judge HUSKEY **CONCUR**.